

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-19-2003

# USA v. Dixon

Precedential or Non-Precedential: Non-Precedential

Docket 01-3910

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Dixon" (2003). *2003 Decisions*. Paper 799.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/799

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3910
_____

UNITED STATES OF AMERICA

v.

DEMONT DIXON

                                        Appellant

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 99-cr-00525-3)
District Judge: Honorable Jan E. DuBois

_____

Submitted Under Third Circuit LAR 34.1(a)
January 21, 2003

Before: BECKER, Chief Judge, NYGAARD and AMBRO,
Circuit Judges.

(Filed: February 14, 2003)
_____

OPINION
_____

BECKER, Chief Judge.

This is an appeal by defendant Demont Dixon from the judgment of the District

court in a criminal case following a bargained-for guilty plea. Dixon's counsel has filed a

brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating, inter alia:

This brief is filed pursuant to *Anders v. California*, 386 U.S. 738 (1968) because undersigned counsel has concluded that there are no non-frivolous issues presented for appellate review. As required by Anders, counsel has throughly reviewed the record and has attempted to identify issues that arguable have merit. As a result of this review, counsel has come to the conclusion that there is only one issue that can even remotely be characterized as possessing arguable merit and that is whether the district court abused its discretion when it found that appellant's sentence in this case should be only partially concurrent to the sentences that he is serving for other cases. Because, however, there is nothing in the record which would indicate or suggest that the district court abused its discretion with respect to this aspect of appellant's sentence, it is counsel's belief that this issue provides no basis for relief on appeal otherwise.

After thorough examination of the proceedings, we agree with counsel that there are no non-frivolous issues to raise on appeal.

## I.

Dixon and twenty co-defendants were charged on August 31, 1999 with conspiracy to transport stolen vehicles in interstate commerce, interstate transportation of stolen vehicles, and selling stolen vehicles. Dixon was charged with the conspiracy offense set forth in Count One and the substantive sales offense set forth in Count Seven. In due course, Dixon entered a guilty plea to the conspiracy charge. As consideration for the guilty plea, the government agreed to dismiss the substantive offense at the time of sentencing. The District Court accepted the plea and ordered the Probation Department to prepare a presentence investigation report ("PSI").

Sentencing took place on October 16, 2001. After hearing argument from counsel

concerning the Probation Department's calculation of Dixon's base offense level under the sentencing guidelines, the District Court partially sustained his objections to the PSI. The Court thereafter sentenced Dixon to a term of fifty-five months imprisonment with thirty months of that sentence to be served concurrently with a sentence that he was serving for prior offenses. The Court also ordered Dixon to serve a period of three years supervised release.

The indictment alleged that between March of 1995 and May of 1997, Dixon and his co-defendants were involved in a conspiracy to steal luxury automobiles in Philadelphia and then transport the vehicles back to New York where they would be "replated," which refers to "the removal or obliteration of vehicle identification numbers (VIN) which are stamped on or affixed to various parts of a motor vehicle." Once the vehicles were "replated" in New York, they were either sold in New York or returned to Philadelphia for resale.

The leader of the conspiracy was one Donald Truesdale. Following his arrest in 1997 for other offenses, Truesdale agreed to cooperate with the government and testify against his co-defendants in this case. He did so, including against Dixon, who was charged with participating in the conspiracy and selling or aiding and abetting the sale of a stolen 1996 Toyota Rav-4 on or around January 1997.

In computing Dixon's offense level under the federal sentencing guidelines, the Probation Department relied upon statements from Truesdale and other co-conspirators who had provided information to the government. The Probation Department found that Dixon was Truesdale's primary car thief during the period 1993 through 1997 and that he

was directly or indirectly responsible for the theft of at least seventy-five cars that were worth in excess of $1.5 million. Based on this conclusion, the Probation Department found that Dixon was subject to a base offense level of four under U.S.S.G. § 2B1.1 that was then increased fourteen levels under § 2B1.1(b)(1)(O) because the amount of the loss exceeded $1,500,000.00. Dixon challenged the amount of loss charged to him. However, at the sentencing hearing, the government presented evidence from the special agent in charge of the investigation in support of the loss estimates. After hearing this testimony, the District Court partially sustained Dixon's objections to the offense level increases that were based on the value of the stolen cars and the period of his involvement in the conspiracy and found that the loss figure was between $800,000.00 and $1,500,000.00. This conclusion reduced the total offense level to seventeen and exposed Dixon to a range of fifty-one to sixty months imprisonment.

The Court heard argument from counsel as to whether the sentence should be served concurrently or consecutively to sentences that Dixon was serving for other offenses. The defense contended that the sentence in this case should be fully concurrent with the undischarged terms in the other cases for three reasons: (1) part of the offense conduct was referenced in a PSI from one of the earlier cases; (2) the length of the other sentences was more than adequate to deter Dixon from engaging in criminal conduct after his release; and (3) the two years that Dixon spent in pretrial detention for this case was significantly more punitive than it would have been had he been sentenced earlier and designated to a federal prison. After considering these arguments, the District Court found that a partially

4

concurrent sentence would be reasonable punishment in this case. The Court then sentenced Dixon to a term of fifty-five months imprisonment with thirty months of that sentence to be served concurrently with the other sentences that Dixon was serving, thus effectively sentencing him to a term of twenty-five months imprisonment for his conduct.

## II.

The operative sentencing guideline for determining whether a sentence should be imposed concurrently, partially concurrently, or consecutively is § 5G1.3(c), the application notes to which state that the sentencing court should seek to achieve a "reasonable punishment and avoid unwanted disparity," and that the factors set forth in 18 U.S.C. §3553(a) should be considered in this regard. *Id.* at comment. (n.3). These factors include the nature and circumstances of the offense, the defendant's character, the need for the sentence to reflect to seriousness of the offense, the need to deter the criminal conduct, the need to protect the public from the defendant, the kinds of sentences available, the sentencing ranges prescribed by the guidelines and applicable policy statement, and the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a).

We explained in *United States v. Saintville*, 218 F.3d 246 (3d Cir. 2000), that § 5G1.3(c) gives the District Court discretion in determining whether to order a concurrent, partially concurrent, or consecutive sentence. *Id.* at 248 (a "district court's determination to impose a partially concurrent and partially consecutive sentence [is reviewed] on a an abuse of discretion basis").   In this case, neither a consecutive sentence nor a fully concurrent sentence was required by § 5G1.3(a) or (b). Thus, the District Court had

5

discretion under subsection (c) to decide whether to order the sentence in this case to be served concurrently, partially concurrently, or consecutively to the sentences that Dixon was serving for the prior offenses.  *Saintville*, 218 F.3d at 248.

In exercising that discretion, the District Court made the following remarks:

I'm not going to run the entire [55-month] sentence concurrently with your existing sentences, I'm going to run 30 months of the sentence concurrently and 25 months, a little over two years, consecutively.  I do that because I think to do otherwise would deprecate the seriousness of the crime you committed.  I've taken into consideration -- all of the factors that are listed in -- let me turn to it -- 5(g)(1.3)[sic] and I think that's an appropriate sentence.  In dong so, I take into consideration that the district judge in New York might, might have taken into consideration in reading about the thefts over the weekend in January of 1997, he might have taken that into consideration.  I've taken into consideration all of the factors that were advanced by [defense counsel].

In view of these statements and the specific reference to the factors set forth in the commentary to § 5G1.3, any argument that the District Court abused its discretion in ordering a partially consecutive sentence would be legally frivolous.

Our jurisprudence requires that counsel in an *Anders* situation adequately attempt to uncover the best arguments for his or her client.  *See United States v. Donald Wayne Marvin*, 211 F.3d 778 (3d Cir. 1999).  Having read the entire record, we are satisfied that counsel has fulfilled his *Anders* obligations.  We will therefore grant counsel's request to withdraw, and will affirm the judgment on the merits.[1]

---

[1]We also note our view that, because the issues presented in the appeal lack legal merit, they do not require the filing of a petition for writ of certiorari with the Supreme Court.  3d Cir. LAR 109.2(b)(2000).

_____

BY THE COURT:

 /s/ Edward R. Becker

Chief Judge