NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3457
_____

UNITED STATES OF AMERICA

v.

LELAND ALEXANDER,
Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 11-cr-75)
District Judge: Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
April 13, 2012

Before:  McKEE, *Chief Judge,* HARDIMAN, *Circuit Judge*
and JONES, II,* *District Judge*

(Opinion Filed: July 24, 2012)

_____

OPINION OF THE COURT
_____

---

* The Honorable C. Darnell Jones, II, District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

JONES, II, *District Judge*.

On August 25, 2011, Appellant Leland K. Alexander ("Alexander") pleaded guilty to the charge of Felon in Possession of a Firearm, pursuant to 18 U.S.C. § 922(g)(1)**,** and was sentenced to serve a 78-month term of imprisonment, followed by three years of supervised release. The sentencing court further ordered that the sentence be served consecutively to an existing state sentence. Alexander now appeals his judgment of sentence. For the reasons set forth below, that judgment will be affirmed.

**I.**

We write primarily for the benefit of the parties and thus recount only the essential facts and procedural history.

On or about September 10, 2008, Alexander was convicted in New Jersey's Union County Superior Court, of Possession of a Weapon for an Unlawful Purpose - namely, a paintball gun - in violation of New Jersey Statutes Annotated, Section 2C:39-4. (A44-45). On or about August 27, 2010, Alexander knowingly possessed a top-break, sawed-off, double-barreled, 12-gauge shotgun and six shotgun shells, outside his residence located at 20 Shaw Avenue in Newark, New Jersey. (A44). At approximately 1 p.m. on that date, Alexander sold the shotgun and shells to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives in exchange for five hundred and forty dollars ($540.00). (A44; PSR ¶¶ 1, 9-10).

On September 29, 2010, the sawed-off shotgun was tested by the Newark Police Ballistics Laboratory and was found to be operable and capable of being discharged. (PSR ¶ 12). Because Alexander had been previously convicted in New Jersey on a

2

weapon possession charge, local authorities referred the matter to federal authorities and on January 26, 2011 – as Alexander was in custody on a state offense – a warrant was issued for his arrest.

On April 25, 2011, Alexander pled guilty in the United States District Court for the District of New Jersey, to one charge of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (A28-50). A sentencing hearing was held on August 25, 2011, at which time the court considered relevant statutory and guideline provisions, the Pre-Sentence Investigation Report ("PSR") prepared by the United States Department of Probation, Sentencing Memoranda submitted by both sides, and oral arguments. The court also heard information regarding Alexander's personal background, including his aptitude for athletics and how his life went astray after a one-semester stint at the Berean Institute in Philadelphia.

Alexander is the oldest of three brothers, all of whom lived with their mother in Newark, New Jersey at the time of Alexander's current offense. (A51; PSR ¶ 55). Alexander is also the father of four children from three different relationships. (PSR ¶¶ 61-62). The children range in age from one to four and Alexander is currently in arrears on court-ordered child support payments for his oldest son. (PSR ¶ 61).

Alexander's father left the family when Alexander was twelve years old. Alexander claims that because of the pressure he placed upon himself to contribute financially towards his struggling family, he made some poor choices which led him to where he is today. In support of a requested lenient sentence, Alexander claimed "if he

3

had a positive male role model in his life, he would not have began [sic] to 'look to the streets for a father figure' and things may have turned out differently." (A51; PSR ¶ 58).

It was Alexander's belief that by pleading guilty to the instant offense, he could "end his pattern of bad choices and contacts with the criminal justice system." (A52). Therefore, he asked the sentencing court to impose a sentence below the recommended guideline range of 70 to 87 months,[1] and requested that any sentence imposed be ordered to run concurrently with the state sentence he was serving at the time. (A55).

After considering all of the information before it, the sentencing court ultimately imposed a 78-month term of imprisonment, and ordered that it run consecutively to Alexander's imprisonment on any previous state or federal sentence. (A69). The court also imposed a three-year term of supervised release and a one hundred dollar ($100.00) special assessment fee, while waiving any potential fine. (A69).

The within appeal followed.

## II

The issue presented for this Court's consideration is twofold. First, Alexander questions whether imposition of a 78-month sentence was "overly punitive." Second, he asks us to assess whether the decision to run that sentence consecutively to a sentence currently being served, was "overly severe" and "even more unreasonable." (Appellant Br. 2). As such, Alexander is not challenging the procedural aspect of his sentence; only the substantive reasonableness. (Appellant Br. 11).

In conducting our assessment, we are mindful that . . .

---

[1] Alexander sought a sentence of 60 months.

4

In addition to being procedurally reasonable, a sentence must also be substantively reasonable. For a sentence to be substantively reasonable, a district court must apply the § 3553(a) factors reasonably to the circumstances of the case. A sentence that falls within the recommended Guidelines range, while not presumptively reasonable, is less likely to be unreasonable than a sentence outside the range. The pertinent inquiry is "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." The party challenging the sentence bears the ultimate burden of proving its unreasonableness, and we accord great deference to a district court's choice of final sentence.

*United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007) (citations omitted).

This analysis shall be conducted by utilizing an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

At the time of sentencing, Alexander did not seek a downward departure from the sentencing guidelines. (A61). However, he did seek a variance based upon "personal circumstances." (A61-62). The crux of Alexander's argument to the sentencing court was that an exception should be made for him because he was an extraordinary athlete but "things just sort of fell apart for him." (A62). Alexander's counsel argued that his client felt the pressure of negative influences and wandered down the wrong path in an effort to help his mother and siblings, but that he was ready to change and had the support of his family to do so. (A63). Counsel also referenced Alexander's "young" age of twenty-three, and the fact that although he had "amassed a considerable number of [criminal history] points in a short period of time," it was all just the result of "acting foolish and making poor choices" involving weapons and drugs. (A63-64). Accordingly, Alexander sought a 10-month variance from the lower end of the 70 to 87-month

5

guideline recommendation, and requested that the sentence be served concurrently with a four-year sentence he was already serving on a state-imposed sentence. (A64, 66).

In response to Alexander's request, the government emphasized the seriousness of the offense for which he stood convicted, and Alexander's criminal history, which includes three felony convictions, with probation violations for each. (A67).

Upon careful consideration of these arguments - and after having determined the applicable guidelines range and confirming the non-existence of any motion for departure - the court set forth its consideration of all relevant "3553(a)" factors.[2] Exercising the discretion afforded to him, Judge Cavanaugh ultimately sentenced Alexander to a 78-month term of imprisonment.

Alexander contends that despite his presentation of mitigating factors, the District Court "strictly adhered" to the guidelines and imposed an unreasonable sentence. (Appellant Br. 10). This contention is not borne out by the record, when viewed *in toto*. Moreover, we have held that a sentencing court's "failure to give mitigating factors the weight a defendant contends they deserve" does not necessarily "render[ ] the sentence unreasonable." *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007). Circumstances regarding upbringing, addiction, and parental status, do not necessarily

---

[2] These factors include consideration of: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with the educational or vocational training and medical care he needs; the kinds of sentences available, the sentencing ranges established by the guidelines; pertinent policy statements by the Sentencing Commission; the need to avoid sentencing disparities; and, the need to provide a victim with restitution. 18 U.S.C. § 3553(a).

"suggest[ ] that [a defendant's] position is so unique that it makes the district court's refusal to vary his sentence downward 'illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'"  *United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009)), *cert. denied*, 131 S. Ct. 488 (2010).

The sentence imposed upon Alexander was within the lower half of the recommended guidelines range and cannot be deemed "overly punitive," as he so states. Alexander is essentially asking us to re-weigh the evidence presented to the District Court, but our duty is not to second guess.  *United States v. Levinson*, 543 F.3d 190, 196 (3d Cir. 2008).

In assessing post-*Booker*[3] sentencings, we have determined that:

> A sentence that falls within the guidelines range is more likely to be reasonable than one outside the guidelines range.  There are no magic words that a district judge must invoke when sentencing, but the record should demonstrate that the court considered the § 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record.

*United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006).

Further, "if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."  *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

---

[3] *United States v. Booker*, 543 U.S. 220 (2005) (holding that the sentencing guidelines are advisory).

The record before us supports the sentence imposed, as the sentencing judge unambiguously stated that he read defense counsel's "very fine memo" and considered all of the facts presented to him by both sides, including Alexander's "history and characteristics." (A62, 66, 68).[4] *See Cooper*, 437 F.3d at 329 ("The court need not discuss every argument made by a litigant if an argument is clearly without merit. Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing.") (citations omitted). Having obviously considered the factors in this case, the court was within its discretion to impose a sentence that not only took into account Alexander's family history and upbringing (as presented by the defense), but also addressed other important factors, such as: Alexander's "very poor prior [criminal] record"; the fact that "gun use is rampant" and the public needed to be protected; the fact that this particular offense was "very serious"; the need for adequate deterrence; and the fact that Alexander had already squandered opportunities for rehabilitation from prior convictions.[5,6] (A68). Accordingly, it is evident that "particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a)." *Levinson,* 543 F.3d at

---

[4] As such, Alexander's statement that "[t]he district court failed to adequately review the specifics of that [criminal] record" is unfounded. (Appellant Br. 16).

[5] Alexander's reliance on *United States v. Olhovsky*, 562 F. 3d 530, 552 (3d Cir. 2009) for the proposition that "a court's distaste for a particular offense cannot drive a sentence," is misplaced. The nature of the sentencing court's statements herein is wholly distinguishable from those at issue in *Olhovsky*. Further, the record clearly demonstrates that the sentencing court's concern regarding rampant gun use was not the sole reason for the sentence imposed in this case.

[6] Alexander's statement that "[h]aving already served a significant period in jail by the time he was sentenced, it follows that the punitive and deterrent aspects of sentencing were already taking effect" is belied by his own past record. (Appellant Br. 17).

195. Moreover, nothing in the record indicates that the sentencing judge refused to vary from the low end of the guidelines range for an improper reason. *United States v. Rome,* 384 F. App'x 135, 141 (3d Cir. 2010) (non-precedential) (noting that absent any support from the record, an appellant's mere argument that a sentence is "overly punitive" does not demonstrate an abuse of discretion).[7] *See also Cooper.* 437 F.2d at 331 ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable. The advisory guidelines range is itself one of the § 3553(a) factors, 18 U.S.C. § 3553(a)(4), and continues to play an integral part in sentencing decisions.").

Accordingly, Alexander's argument that the court's imposition of a 78-month term of imprisonment was "overly punitive and therefore substantively unreasonable," is without merit.

This Court now turns to the merits of Alexander's argument that the sentencing court improperly imposed a consecutive sentence. The same is unfounded.[8] At the time of the instant offense, Alexander was serving a state sentence, therefore the following statutory provision applies:

> If a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently

---

[7] Similar to the instant case, the sentencing court in *Rome* was faced with the argument that the recommended sentencing guideline range was "too long for what [Rome saw] as low-level drug offenses." *Id.* at 141. However, we found that the sentencing judge's "concern about Rome's relative youth, his repeat offenses, his continued failure to comply with the conditions of his supervised release, and the break he got from Judge Bassler on the previous drug violation," as well as her consideration of general deterrence and "the message that [she] send[s] to the community," all suggested that she was *not* sentencing Rome within the recommended range for improper reasons. *Id.*

[8] Notably, Alexander provides no legal authority for this argument.

or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.

18 U.S.C. § 3584(a).

Additionally, "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b).

The guidelines mirror this precept, providing that under circumstances such as those involved herein, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c).

The sentencing court in this case found in pertinent part that Alexander "has[,] on a number of occasions[,] been placed on probation, and he hasn't done well with it. He's been in trouble on numerous occasions, and apparently, even though he's been punished on some of those occasions, he hasn't learned from any of that." (A68). Undoubtedly, the court was deeply dissatisfied with Alexander's increasingly apparent tendency towards recidivism and when the decision was made to impose a consecutive sentence, "[n]othing in the language of [section 5G1.3(c)] or its Commentary require[d] [the] district court[ ] to make specific findings with respect to any or all of the factors listed in the Commentary or [18 U.S.C.] § 3553(a)." *United States v. Saintville*, 218 F.3d 246, 249 (3d Cir. 2000) (quoting *United States v. Velasquez*, 136 F.3d 921, 924 (2d Cir.

10

1998)).  Mindful that "the trial court [is] in the best position to determine the appropriate sentence in light of the particular circumstances of the case," we find no abuse of discretion.  *Cooper*, 437 F.3d at 330.

## III

In view of the foregoing, we affirm the District Court's judgment of sentence.